UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
AT LEXINGTON
CIVIL ACTION NO. _____

SHELTER MUTUAL INSURANCE COMPANY            PLAINTIFF

v.

JAMES SPURLIN

   Serve: 1905 Stanford Road
          Lancaster, KY 40444-7958
and

SPURLIN FUNERAL HOME, INC.            DEFENDANTS

   Serve: Registered Agent
          James D. Spurlin
          1905 Stanford Road
          Lancaster, KY 40444-7958

## COMPLAINT FOR DECLARATORY RELIEF

Comes Plaintiff, Shelter Mutual Insurance Company ("Shelter"), and for its Complaint for Declaratory Relief against Defendants, James Spurlin ("Spurlin") and Spurlin Funeral Home, Inc. (the "Funeral Home"), states the following:

### I. PARTIES, JURISDICTION AND VENUE

1. Plaintiff, Shelter, is a corporation incorporated under the laws of the state of Missouri and is authorized to do business in the Commonwealth of Kentucky.

2. Defendant, James Spurlin, is and was at all times relevant to this action a citizen of Kentucky residing at 1905 Stanford Road, Lancaster, Kentucky 40444.

3. Defendant, Spurlin Funeral Home, Inc., is and was at all times relevant to this action a Kentucky Corporation with its principle place of business located at 1164 Lexington

Road, Lancaster, Kentucky 40444. The Funeral Home is authorized to and is actually transacting business in the Commonwealth of Kentucky. The Funeral Home's registered agent and President is listed as James D. Spurlin, 1905 Stanford Road, Lancaster, Kentucky 40444.

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) as it involves citizens of different states and the amount in controversy, as described more fully below, exceeds the sum or value of $75,000 exclusive of interest and costs.

5. Venue is proper in this District, pursuant to 28 U.S.C. 1391. Spurlin is a resident of this District, the Funeral Home has its principal place of business in this District and a substantial part of the events giving rise to this action occurred in this District.

## II. THE LAY LAWSUIT

6. On January 22, 2019, Corey Lay, Individually and as Next Friend of John Doe, a minor and Clayton Doan ("Lay and Doan") filed suit against Spurlin and the Funeral Home in the Garrard County, Kentucky Circuit Court, Civil Action No. 19-CI-00012, (the "Lay Lawsuit") (The Lay Lawsuit is attached hereto as "Exhibit A").

7. The Lay Lawsuit alleges that on December 28, 2018, Spurlin and the Funeral Home placed an electronic device capable of wirelessly transmitting images of individuals using the men's restroom.

8. The Lay Lawsuit alleges that the electronic device actually captured video and/or images depicting Lay and Doan while they were using the restroom at the Funeral Home and transmitted those images wirelessly to other electronic devices in Spurlin's care, custody and control.

9. The Lay Lawsuit alleges that the electronic device captured images of Lay and Doan partially undressed, without their knowledge or consent.

10. The Lay Lawsuit alleges that after the discovery of the electronic device, Spurlin attempted to enter the men's restroom so that he could take the electronic device and immediately destroyed the memory card from the electronic device in an effort to secret the information that had been recorded.

11. The Lay Lawsuit alleges that Spurlin destroyed the memory card in order to hide evidence of the device's true purpose, to capture nude images of individuals using the men's room on Spurlin Funeral Home's premises without the knowledge and consent of those individuals.

12. The Lay Lawsuit alleges that Spurlin was observing images transmitted wirelessly from the electronic device while Lay and Doan were using the men's room.

13. The Lay Lawsuit alleges that Spurlin was acting in the course and scope of his employment with the Funeral Home at the time that the electronic device was installed, while it was in use, and while each of the images of Lay and Doan were captured without their knowledge and consent.

14. The Lay Lawsuit alleges that Spurlin violated KRS 531.090.

15. The Lay Lawsuit alleges that Spurlin violated KRS 531.100.

16. The Lay Lawsuit alleges that Spurlin's conduct was so far beyond the bounds of a civilized decent society that it is outrageous and entitles Lay and Doan to damages for intentional infliction of emotional distress.

17. The Lay Lawsuit alleges that Spurlin intentionally intruded upon the solitude of seclusion of the private affairs or concerns of Lay and Doan, which was highly offensive to Lay and Doan.

18. The Lay Lawsuit alleges that Spurlin invaded the right of privacy of Lay and Doan.

19. The Lay Lawsuit alleges that Spurlin acted in such an intentional and/or grossly negligent manner that Lay and Doan are entitled to an award of punitive damages.

### III.   THE CLARK LAWSUIT

20. On July 22, 2019, Kenneth Clark ("Clark") filed suit against Spurlin and the Funeral Home in the Garrard County, Kentucky Circuit Court, Civil Action No. 19-CI-00147, (the "Clark Lawsuit") (The Clark Lawsuit Complaint is attached hereto as "Exhibit B.")

21. The Clark Lawsuit alleges that on December 28, 2018, Clark was attending visitation at the Funeral Home and during the course of his attendance, he used the men's restroom at the Funeral Home on more than one occasion.

22. The Clark Lawsuit alleges that Clark learned that there had been discovered some sort of electronic recording device located in the men's restroom which he had used at the Funeral Home.

23. The Clark Lawsuit alleges that the recording device was one wherein persons located within, and utilizing the restroom, may be seen and recorded while using the restroom.

24. The Clark Lawsuit alleges that Clark did not have prior knowledge of the recording device and did not in any way or manner consent to being recorded or otherwise observed while utilizing the Funeral Home restroom.

25. The Clark Lawsuit alleges that the device was working and would or did record and/or otherwise capture images of, persons utilizing the Funeral Home restroom on the occasion referenced.

26. The Clark Lawsuit alleges that Clark is aware that the device was discovered by another family member and removed from its location in the restroom.

27. The Clark Lawsuit alleges that immediately thereafter, Spurlin or other employees of the Funeral Home presented to the restroom to secure the device from the family member and that Clark assumes the device was actively recording at the time that it was discovered because of the immediate intrusion by Spurlin or the Funeral Home employees.

28. The Clark Lawsuit alleges that Clark is unaware of the condition of the recording device, or any related equipment and/or accessories thereto, and is unaware of the status of any captured data or images reflecting persons, including Clark, using the restroom.

29. The Clark Lawsuit alleges that Spurlin is the owner of, and may be considered an employee of, the Funeral Home and was apparently present and presumably working during the course and scope of his employment upon the occasion of the incident described and was apparently knowledgeable of the electronic device, its recording capability, and in fact its recording and/or capturing of images, upon the occasion of the incident.

30. The Clark Lawsuit alleges that Spurlin's conduct may have violated one or more Kentucky Revised Statutes, including criminal statutes, and/or KRS Chapter 446, and/or other statutes which may be identified during the course of discovery.

31. The Clark Lawsuit alleges that Spurlin's actions were intentional, reckless, negligent, grossly negligent and violating Kentucky Statutes so that Spurlin may be negligent per se.

32. The Clark Lawsuit alleges that Spurlin's conduct being intentional, grossly negligent, uncivilized and outrageous entitles Clark to damages for violation of the Tort of Outrage.

33. The Clark Lawsuit alleges that Clark's privacy rights were violated by Spurlin, including intentional intrusion upon seclusion of Clark, to his damage.

34. The Clark Lawsuit alleges that the intentional and/or grossly negligent acts and/or omissions entitle Clark to an award of punitive damages.

35. The Clark Lawsuit alleges that as a direct and proximate result of your conduct, Clark has suffered damages for which he should be compensated, including but not limited to, past, present and future emotional distress, mental anguish, and/or pain and suffering, for medical and/or counseling expenses past, present and into the future, for ongoing actual consequential damages yet to be determined, for punitive damages and for attorney's fees, costs and expenses.

## IV.   THE SHELTER POLICIES GENERALLY

36. On December 28, 2018, Spurlin was the named insured on a Shelter Mutual Insurance Company Farmowners' Insurance Policy (Form FO3 KY1), Policy Number 16-72-2699436-1 (the "Farmowners' Policy").  A complete certified copy of the Farmowners' Policy is attached hereto as "Exhibit C."

37. The Farmowners' Policy, subject to its terms and conditions, provides personal liability coverage limits of $500,000.00 per occurrence.

38. Spurlin has requested coverage under the Farmowners' Policy for the claims made against him by Lay and Doan and Clark.

39. Shelter has offered a defense to Spurlin under a Reservation of Rights.

40. On December 28, 2018, Spurlin was the named insured on a Shelter Mutual Insurance Company Personal Umbrella Insurance Policy (Form B-202.5-B), Policy Number 16-

32-2699436-2 (the "Umbrella Policy"). A complete certified copy of the Umbrella Policy is attached hereto as "Exhibit D."

41. The Umbrella Policy, subject to its terms and conditions, provides personal liability coverage limits of $300,000.00 per occurrence.

42. Spurlin has requested coverage under the Umbrella Policy for the claims made against him by Lay and Doan and Clark.

43. Shelter has offered a defense to Spurlin under a Reservation of Rights.

44. From June 28, 2018 to December 28, 2018 at 12:01 a.m., the Funeral Home had been listed as the named insured on a Shelter Mutual Insurance Company Business Insurance Policy (B-253.2-B), Policy Number 16-78-2699436-8 (the "Business Policy"). A complete certified copy of the Business Policy is attached hereto as "Exhibit E."

45. The Business Policy lapsed and was not renewed on December 28, 2018 at 12:01 a.m. due to non-payment of premium.

46. The Funeral Home had no Business Policy in place with Shelter beginning on December 28, 2018 at 12:01 a.m.

47. There was no Business Policy with Shelter that provided coverage for the date of December 28, 2018 after 12:01 a.m., when the incidents complained of in the Lay Complaint and the Clark Complaint are alleged to have occurred.

48. Only if it is determined to have been in effect at the time of the incidents described in the Lay Lawsuit and the Clark Lawsuit, the Business Policy, subject to its terms and conditions, provides bodily injury, personal injury and property damages liability coverage limits of $1,000,000.00 per occurrence.

49. The Funeral Home has requested coverage under the Business Policy for the claims made against it by Lay and Doan and Clark.

50. Shelter has offered a defense to the Funeral Home under a Reservation of Rights.

51. The Farmowners' Policy and Umbrella Policy provide no coverage for the allegations against Spurlin as described in the Lay Lawsuit or the Clark Lawsuit arising out of the incidents of December 28, 2018, according to the policies' terms and conditions.

52. The Business Policy was not in effect at the time of the alleged allegations against the Funeral Home on December 28, 2018.

53. Even if it was in effect, which is disputed, the Business Policy provides no coverage for the allegations against the Funeral Home as described in the Lay Lawsuit or the Clark Lawsuit arising out of the incidents of December 28, 2018, according to the policy's terms and conditions.

54. Shelter petitions this Court for a declaration that it is not obligated to provide any insurance coverage, including defense and indemnity, to Spurlin pursuant to the terms and conditions of the Farmowners' Policy and Umbrella Policy.

55. Shelter petitions this Court for a declaration that it is not obligated to provide any insurance coverage, including defense and indemnity, to the Funeral Home pursuant to the terms and conditions of the Business Policy.

### V. SHELTER FARMOWNERS' INSURANCE POLICY

56. The Farmowners' Policy states, in pertinent part, the following:

#### SPECIAL COVERAGE FORM 3
**AGREEMENT**
**We** agree to insure **you** according to all the terms of this policy,
  (1) In reliance on **your** statements in the Application and in any Application for Change and in the Declarations, made a part hereof, and

(2) Based on **your** payment of the premium.

When **you** pay the premium, this policy provides the insurance **you** chose, as shown in the Declarations. If any premium payment is by check, no insurance is provided if the check is not honored by the bank.

  57. The Farmowners' Policy states, in pertinent part, the following definitions:

**DEFINITIONS USED THROUGHOUT THIS POLICY**

The terms defined below appear in bold type throughout this policy:

2. **Bodily injury** means bodily injury, sickness or disease and includes care, loss of services and resulting death.

3. **Business** means:
(a) Any full or part time trade, profession or occupation; and
(b) the rental of holding for rental of any premises by an **insured**.
[ ]

…

8. **Insured** means:

(a) **You**;

(b) **Your** relatives residing in **your** household; and

(c) Any other person under the age of 21 residing in your household who is in **your** care or the care of a resident relative.

[ ]

9. **Insured premises** means:
(a) The farm premises and **residence premises** described in the Declarations.
[ ]

12. **Occurrence** means an accident including injurious exposure to conditions, which results, during the policy term, in **bodily injury** or **property damage**.

17. **Residence premises** means the one or two family dwelling where **you** reside, which is described in the Declarations, including the immediate grounds not used for **farming**.

19. **We**, **us** and **our** mean the Company providing this insurance.

20. **You** and **your** mean the insured named in the Declarations and **spouse** if living in the same household.

  58. The Farmowners' Policy provides personal liability coverage pursuant to the following terms:

**SECTION II – COMPREHENSIVE PERSONAL LIABILITY PROTECTION**

9

**COVERAGE E - PERSONAL INJURY LIABILITY**
**We** will pay all sums arising out of any one loss which an **insured** becomes legally obligated to pay as damages because of **bodily injury** or **property damage** and caused by an **occurrence** covered by this policy.

**EXCLUSIONS – SECTION II**
Under Personal Liability and Medical Payments To Others, **we** do not cover:
   4. **Bodily injury** or **property damage** arising out of **business** pursuits of an **insured** if those pursuits caused, or contributed to cause, the **bodily injury** or **property damage**. This exclusion does not apply:
      (a) To activities of the **insured** ordinarily incident to non-**business** pursuits;
      [ ]
   5. **Bodily injury** or **property damage** arising out of any premises owned, rented, or controlled by an **insured** which is not an **insured premises**. [ ]
   6. **Bodily injury** or **property damage** expected or intended by an **insured**.

Additional Farm Dwelling(s)

In the section of the policy headed: EXCLUSIONS – SECTION II, exclusion number 4 (related to Personal Liability and Medical Payments To Others) is removed and replaced with this provision:
   4.   **Bodily injury** and **property damage** arising out of business pursuits of an **insured**.
         This exclusion does not apply to:
         (a) Activities of the **insured** ordinarily incident to non-**business** pursuits;
   [ ]

### VI.   SHELTER PERSONAL UMBRELLA INSURANCE POLICY

   59.   The Umbrella Policy states, in pertinent part, as follows:

**PERSONAL UMBRELLA POLICY**
**AGREEMENT**
**We** agree with you, in return for your premium payment, to provide insurance subject to the terms of this policy. The limits of our liability, are shown in the policy Declarations.

   60.   The Umbrella Policy states, in pertinent part, the following definitions:

**DEFINITIONS USED THROUGHOUT THIS POLICY**
3.   **Bodily injury** means:

(a) a physical injury;

(b) a sickness or disease of the body;

10

(c) the physical pain and physical suffering that directly results from (a) or (b) above; and

(d) a death that directly results from (a) or (b) above.

Bodily injury does not mean:

>   (a) a mental injury;
>   (b) a sickness or disease of the mind;
>   (c) mental anguish; or
>   (d) emotional distress; unless such mental or emotional condition is diagnosed by a medical doctor and directly results from bodily injury to an individual related by blood or marriage to the individual making the claim against the insured.

4. **Business** means any activity for which the person engaged in that activity:
(a) received compensation of any kind; or
(b) reasonably expects to receive compensation of any kind.
[ ]
5. **Business property** means real or personal property that is used in any **insured's business**.

6. **Claim** means a request by any **person** for benefits under this policy. It includes lawsuits, requests for the payment of money and requests that **we** take any action, or extend any coverage, under this policy.

10. Insured means:
(a) **You**;
(b) **Your relatives**;
[ ]

12. **Loss** means **personal injury**, **bodily injury**, or **property damage**.

21. **Personal injury** means damage or injury that is directly caused by one or more of the following tortuous acts:
    [ ]
    (f)   invasion of the right of occupancy;
    (i)   humiliation;
    (j)   invasion of the right of privacy;
    [ ]
**Personal injury** does not include any damage or injury caused by an illegal act committed by, or at the direction of, any **insured**.

31. **Underlying insurance** means a policy of insurance:
    (a)   of the type listed in the Declarations;
    (b)   with limits of at least the amount shown in the Declarations;
    (c)   that applies to the **loss** for which coverage is sought under this policy.

11

If a policy of insurance fails to meet all three of the elements stated in (a), (b), and (c) above, it is not underlying insurance.

33.     **We**, **us** and **our** mean the Shelter company providing this insurance.

    61.     The Umbrella Policy provides personal liability coverage pursuant to the following terms:

INSURING AGREEMENTS
1. **We** will pay the amount by which the **net obligation** exceeds the **retained limit**, up to the limits of liability stated for this policy in the Declarations.

EXCLUSIONS
Exclusion Group A
(**claims** for all **losses** excluded unless there is **underlying insurance**)

**We** do not cover **claims** resulting from any of these types of **losses** unless there is **underlying insurance**.
1. **Losses** caused by any **business activity** or on, or with, any **business property**.  This exclusion does not apply to **losses** caused by sexual molestation, corporal punishment, physical abuse, or mental abuse related to an **insured's business** activities in caring for others.  Those **losses** are excluded under Exclusions Group B of this policy and are not covered even if there is **underlying insurance**.

Exclusion Group B
(**claims** for all **losses** excluded)

**We** do not cover **claims** resulting from any type of **loss**:
   7. Caused by:
     (a) Sexual molestation;
     (b) Corporal punishment;
     (c) Physical abuse, or
     (d) Mental abuse
   related to an **insured's business** activities in caring for others.

### VII.    SHELTER BUSINESS POLICY

    62.     The Business Policy states, in pertinent part, as follows:

**BUSINESS INSURANCE POLICY
SPECIAL FORM
INSURING AGREEMENT**

**We** agree to insure **you** according to all the terms of this policy,
   (1) In reliance on **your** statements in the Application and in any Application for Change and in the Declarations, made a part hereof, and

(2) Based on **your** payment of the premium.

When **you** pay the premium, this policy provides the insurance **you** chose, as shown in the Declarations. If any premium payment is by check, no insurance is provided if the check is not honored by the bank.

63. The Business Policy states, in pertinent part, the following definitions:

### DEFINITIONS USED THROUGHOUT THIS POLICY

The terms defined below appear in bold type throughout this policy:

(1) "**You**" and "**your**" mean the **insured** named in the Declarations.

(2) "**We**", "**us**" and "**our**" mean the Company providing this insurance.

(3) "**Bodily injury**" means bodily injury, sickness or disease occurring during the policy terms, and including resulting death at any time.

(7) "**Insured**" means the person(s) or organization named in the Declarations of the policy. Under Section II – Liability **insured** also means:
   (c) if other than an individual, partnership or joint venture, the organization named in the policy Declarations and executive officers, directors or stockholders while acting within the scope of their duties as such;
   (e) any employee of the **insured** while acting within the scope of their duties,

(11) "**Occurrence**" under Section II, means an accident, including continuous or repeated exposure to conditions, which results, during a policy term, in **bodily injury** or **property damage** neither expected nor intended from the standpoint of the **insured**.

(14) "**Personal injury**" means **personal injury** sustained by any person or organization and arising out of one or more of the following offenses committed in the conduct of the **insured's** business:

   (a) false arrest, detention or imprisonment, or malicious prosecution;

   (b) the publication or utterance of a libel or slander or of other defamatory or disparaging materials, or a publication or utterance in violation of an individual's right of privacy; except publications or utterances in the course of or related to advertising, broadcasting or telecasting activities conducted by or for the **insured**;

   (c) wrongful entry or eviction, or other invasion of the right of private occupancy.

64. The Business Policy provides personal liability coverage pursuant to the following terms:

13

SECTION II - LIABILITY

**COVERAGE E** - **BODILY INJURY, PROPERTY DAMAGE AND PERSONAL INJURY LIABILITY**

**We** will pay on behalf of the **insured** all sums which the **insured** shall become legally obligated to pay as damages because of:

1. **Bodily injury** or **property damage** covered by this policy, caused by an **occurrence** and arising out of the ownership, maintenance or use of the **insured premises** and all necessary or incidental operations.

2. **Personal injury** sustained by any person or organization and arising out of the ownership, maintenance or use of the **insured premises** and all necessary or incidental operations.

**SECTION II – EXCLUSIONS**
Under Bodily Injury, Property Damage Liability and Premises Medical Payments **we** do not cover:

   10. liability of the **insured** for punitive damages.

Under Personal Injury Liability, **we** do not cover:

1. **personal injury** arising out of the willful violation of a penal statute or ordinance committed by or with the knowledge or consent of any **insured**.
2. **personal injury** sustained by any person as a result of an offense directly or indirectly related to the employment of such person by the **insured**.

**GENERAL POLICY CONDITIONS APPLYING TO SECTION I AND SECTION II**

   6.   **POLICY PERIOD.**  This policy applies to losses, **bodily injury, property damage** or **personal injury** which occur during the policy period.

   12.  **CONTINUOUS RENEWAL. (Except Illinois and Oklahoma).**  Subject to **our** consent, and subject to the premiums, rules and forms then in effect for **us**, this policy may be continued in force by payment of the required continuation premium for each successive policy term.  Such continuation premium must be paid to **us** prior to the expiration of the then current policy term and if not paid the policy shall terminate.

AMENDATORY ENDORSEMENT – PUNITIVE DAMAGES

This endorsement modifies insurance provided under the following:

   BUSINESS INSURANCE POLICY

A. Under **DEFINITIONS USED THROUGHOUT THIS POLICY**, the following definition is added. Whenever this term is used in this policy (whether or not it appears in bold type), the meaning below applies.

1. **Punitive damages** means a monetary award imposed to punish a wrongdoer and to deter others from similar conduct. It includes exemplary damages. It also includes any damages, or penalties, based upon any legal theory that requires proof of the same standard of conduct necessary to support an award of **punitive damages** or exemplary damages, under the law of the state in which they are awarded.

### VIII.   COUNT I – DECLARATORY JUDGMENT ON FARMOWNERS' POLICY

65. Shelter repeats and incorporates by reference the allegations contained in Paragraphs No. 1 through 64 of this Complaint.

66. The Farmowners' Policy, according to its terms, does not provide coverage, including indemnity or defense, to Spurlin for the allegations contained in the Lay Lawsuit.

67. The Farmowners' Policy, according to its terms, does not provided coverage, including indemnity or defense, to Spurlin for the allegations contained in the Clark Lawsuit.

68. Shelter is therefore entitled to a declaratory judgment that it owes no insurance coverage, including defense and indemnity, to Spurlin under the Farmowners' Policy for any and all claims arising from the incidents alleged in the Lay Lawsuit.

69. Shelter is therefore entitled to a declaratory judgment that it owes no insurance coverage, including defense and indemnity, to Spurlin under the Farmowners' Policy for any and all claims arising from the incidents alleged in the Clark Lawsuit.

### IX. COUNT II – DECLARATORY JUDGMENT ON UMBRELLA POLICY

70. Shelter repeats and incorporates by reference the allegations contained in Paragraphs No. 1 through 69 of this Complaint.

71. The Umbrella Policy, according to its terms, does not provide coverage, including indemnity or defense, to Spurlin for the allegations contained in the Lay Lawsuit.

72. The Umbrella Policy, according to its terms, does not provide coverage, including indemnity or defense, to Spurlin for the allegations contained in the Clark Lawsuit.

73. Shelter is therefore entitled to a declaratory judgment that it owes no insurance coverage, including defense and indemnity, to Spurlin under the Umbrella Policy for any and all claims arising from the incidents alleged in the Lay Lawsuit.

74. Shelter is therefore entitled to a declaratory judgment that it owes no insurance coverage, including defense and indemnity, to Spurlin under the Umbrella Policy for any and all claims arising from the incidents alleged in the Clark Lawsuit.

### X. COUNT III – DECLARATORY JUDGMENT ON BUSINESS POLICY

75. Shelter repeats and incorporates by reference the allegations contained in Paragraphs No. 1 through 74 of this Complaint.

76. The Business Policy was not in effect on December 28, 2018 when the allegations in the Lay Lawsuit are alleged to have occurred.

77. The Business Policy was not in effect on December 28, 2018 when the allegations in the Clark Lawsuit are alleged to have occurred.

78. Even if the Business Policy was in effect on December 28, 2018 when the allegations in the Lay Lawsuit are alleged to have occurred, which is disputed, the Business Policy, according to its terms, does not provide coverage, including indemnity or defense, to the Funeral Home for the allegations contained in the Lay Lawsuit.

79. Even if the Business Policy was in effect on December 28, 2018 when the allegations in the Clark Lawsuit are alleged to have occurred, which is disputed, the Business Policy, according to its terms, does not provide coverage, including indemnity or defense, to the Funeral Home for the allegations contained in the Clark Lawsuit.

80. Shelter is therefore entitled to a declaratory judgment that it owes no insurance coverage, including defense and indemnity, to the Funeral Home under the Business Policy for any and all claims arising from the incidents alleged in the Lay Lawsuit.

81. Shelter is therefore entitled to a declaratory judgment that it owes no insurance coverage, including defense and indemnity, to the Funeral Home under the Business Policy for any and all claims arising from the incidents alleged in the Clark Lawsuit.

## XI. CONDITIONS AND CONTROVERSY

82. Shelter repeats and incorporates by reference the allegations contained in Paragraphs No. 1 through 81 of this Complaint.

83. All conditions precedent to the relief requested by Shelter have been performed or have occurred.

84. There is an actual controversy existing between the parties concerning whether Shelter is obligated to provide Spurlin and the Funeral Home with insurance benefits, including defense and indemnity, for claims arising out of the Lay Lawsuit and the Clark Lawsuit.

85. Shelter has no adequate remedy at law and this is a proper case for the Court to exercise jurisdiction and declare the rights and liabilities of the parties.

## X. PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Shelter Mutual Insurance Company, demands that judgment be entered against Defendants James Spurlin and Spurlin Funeral Home, Inc. as follows:

1. Declaring that Shelter Mutual Insurance Company owes no insurance coverage, including defense and indemnity, to James Spurlin under Farmowners' Insurance Policy, Policy Number 16-72-2699436-1 for any and all claims arising from the Lay Lawsuit;

2. Declaring that Shelter Mutual Insurance Company owes no insurance coverage, including defense and indemnity, to James Spurlin under Farmowners' Insurance Policy, Policy Number 16-72-2699436-1 for any and all claims arising from the Clark Lawsuit;

3. Declaring that Shelter Mutual Insurance Company owes no insurance coverage, including defense and indemnity, to James Spurlin under Personal Umbrella Insurance Policy, Policy Number 16-32-2699436-2 for any and all claims arising from the Lay Lawsuit;

4. Declaring that Shelter Mutual Insurance Company owes no insurance coverage, including defense and indemnity, to James Spurlin under Personal Umbrella Insurance Policy, Policy Number 16-32-2699436-2 for any and all claims arising from the Clark Lawsuit;

5. Declaring that Shelter Mutual Insurance Company owes no insurance coverage, including defense and indemnity, to Spurlin Funeral Home, Inc. under Business Insurance Policy, Policy Number 16-78-2699436-8 for any and all claims arising from the Lay Lawsuit;

6. Declaring that Shelter Mutual Insurance Company owes no insurance coverage, including defense and indemnity, to Spurlin Funeral Home, Inc. under Business Insurance Policy, Policy Number 16-78-2699436-8 for any and all claims arising from the Clark Lawsuit;

7. Awarding Shelter Mutual Insurance Company costs and attorney fees as appropriate; and

8. Awarding Shelter Mutual Insurance Company any and all other relief to which it may be entitled.

Respectfully submitted,

/s/ Patricia L. Harmeling_____
Patricia L. Harmeling
pharmeling@gsblegal.com
GWIN, STEINMETZ & BAIRD PLLC
401 West Main Street, Suite 1000
Louisville, KY 40202
(502) 618-5700 (phone)
(502) 618-5701 (fax)
*Counsel for Shelter Mutual Insurance Company*