```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF KENTUCKY
                     CENTRAL DIVISION at LEXINGTON
```

| | | |
|---|---|---|
| SHELTER MUTUAL INSURANCE COMPANY, | ) ) ) | Case No. |
| Plaintiff, | ) ) | 5:20-cv-63-JMH |
| v. | ) ) | **MEMORANDUM OPINION** |
| JAMES SPURLIN and SPURLIN FUNERAL HOME, INC., | ) ) ) ) | **AND ORDER** |
| Defendant. | ) | |

\*\*\*

This matter is before the Court upon Defendants James Spurlin and Spurlin Funeral Home, Inc.'s Motion to Dismiss for Lack of Subject Matter Jurisdiction [DE 6]. The motion has been fully briefed by the parties and is ripe for review. [DEs 6, 9, 10]. For the reasons set forth herein, Defendants' Motion to Dismiss is **DENIED**.

## I. PROCEDURAL HISTORY

Shelter Mutual Insurance Company ("Shelter Mutual"), a Missouri-based insurance company, seeks a declaration of rights concerning the scope of an insurance agreement with its insured, James Spurlin and Spurlin Funeral Home, Inc., a business operating out of Lancaster, Kentucky. [DE 1 at 1-2]. Shelter Mutual claims it owes no insurance coverage, "including defense or indemnity to Defendants under three separate insurance policies for claims

asserted by four plaintiffs in two separate [state court] lawsuits." [DE 9 at 2].

Ancillary to this declaratory judgment action are two state court cases involving similar allegations. The first complaint, filed by Corey Lay, on behalf of himself and as next friend of John Doe, a minor (hereafter "Lay Complaint"), alleges that on December 28, 2018, Defendants placed electronic devices at the funeral home which captured and transmitted video images of individuals using the men's restroom. [DE 1 at 2-4]. The second complaint, filed by Kenneth Clark, alleged the same (hereafter "Clark Complaint"). [DE 1 at 4-6]. Both complaints assert claims seeking damages for past, present, and future mental pain and suffering; actual, consequential, incidental, and foreseeable damages; punitive damages; and attorney's fees, costs, pre- and post-judgment interest, and expenses. [DE 1-1 at 5-6; DE 1-2 at 4-5]. Consistent with Kentucky law, the state court complaints do not specify the amount of damages. *See Hollon v. Consumer Plumbing Recovery Center*, 417 F. Supp.2d 849, 852-53 (E.D. Ky. 2006); Ky. R. Civ. P. 8.01.

On April 14, 2020, Defendants filed a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), specifically alleging that Shelter Mutual failed to offer proof showing that the amount in controversy meets the threshold required by 28 U.S.C. § 1332(a). [DE 6]. Shelter Mutual filed a response to

Defendants' motion on May 1, 2020, arguing that the burden has been met, given the circumstances and claims involved in the underlying state court action. [DE 9]. Defendants subsequently filed a reply. [DE 10]. As a result, Defendants' Motion to Dismiss is ripe for review, and the Parties' arguments shall be reviewed in turn.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) provides that a defendant may assert lack of subject-matter jurisdiction as a defense. Fed. R. Civ. P. 12(b)(1). A motion to dismiss under Rule 12(b)(1) is different than one under Rule 12(b)(6) in that it challenges the Court's power to hear the case before it. When jurisdiction is challenged under this rule, the burden is generally on the plaintiff to prove that jurisdiction exists. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996).

In evaluating a motion to dismiss under Rule 12(b)(1), courts must first consider whether the challenge to subject-matter jurisdiction is a facial attack or a factual attack. *Cartwright v. Garner*, 751 F.3d 752, 759-60 (6th Cir. 2014). An attack on the factual basis of jurisdiction challenges the "factual existence of subject-matter jurisdiction," leaving the court with "broad discretion with respect to what evidence to consider in deciding whether subject matter jurisdiction exists, including evidence

3

outside of the pleadings, and has the power to weigh the evidence and determine the effect of that evidence on the court's authority to hear the case." *Arnold v. Liberty Mutual Ins. Co.*, 392 F. Supp.3d 747, 762 (E.D. Ky. 2019) (internal citations omitted). Moreover, "when considering a factual attack, there is no presumption of truthfulness applied to the allegations." *Merck Sharp & Dohme Corp. v. Conway*, No. 3:11-cv-51-DCR, 2012 WL 1029427, at *2 (E.D. Ky. Mar. 26, 2012) (citing *Mich. S.R.R. Co. v. Branch & St. Joseph Counties Rail Users Ass'n*, 287 F.3d 568, 573 (6th Cir. 2002)). Instead, the Court "must weigh the conflicting evidence to arrive at the factual predicate that subject-matter [jurisdiction] does or does not exist." *Id.*

### III. DISCUSSION

Defendants do not contest diversity of citizenship, but rather, argue that Shelter Mutual has failed to offer proof that the amount in controversy meets the required threshold. [DE 6 at 1]. For diversity jurisdiction, 28 U.S.C. § 1332 requires complete diversity between the parties, plus an amount in controversy exceeding "the sum or value of $75,000, exclusive of interest and costs." *See* 28 U.S.C. § 1332(a).

The burden of satisfying the amount in controversy requirement is not particularly onerous. *See EQT Gathering, LLC v. Webb*, No. 13-132-ART, 2014 WL 1577055, at *3 (E.D. Ky. Apr. 17, 2014). That is, for cases originally brought into federal court,

4

"a plaintiff's good faith assessment of his claim's value controls." *Frankenmuth Mutual Ins. Co. v. Balis Campbell, Inc.*, No. 6:18-CV-291-CHB, 2020 WL 376610, at *2 (E.D. Ky. Jan. 23, 2020). Put another way, for a case to be dismissed based on amount-in-controversy grounds, it must "appear[] that the plaintiff's assertion of the amount in controversy was made in bad faith." *Grange Mut. Cas. Co. v. Safeco Ins. Co. of America*, 565 F. Supp.2d 779, 783 (E.D. Ky. 2008) (quoting *Schultz v. Gen. R.V. Ctr.*, 512 F.3d 754, 756 (6t Cir. 2008)). Consequently, "dismissal based on the amount in controversy is improper unless it appears to a legal certainty that the plaintiff's claim does not meet the jurisdictional threshold." *Frankenmuth Mutual Ins. Co.*, 2020 WL 376610, at *2 (internal citations omitted).

Notably, this standard is procedurally distinct from the preponderance standard that a defendant attempting to remove a case from state court on the basis of diversity jurisdiction must meet. *See CSAA Gen. Ins. Co. v. Bailey*, No. 5:20-CV-158-REW-MAS, 2021 WL 354464, at *2 (E.D. Ky. Feb. 2, 2021) (citing *Northup Props., Inc. v. Chesapeake Appalachia, LLC*, 567 F.3d 767, 769-70 (6th Cir. 2009) ("The burden is on [the removing party] to show by a preponderance of the evidence that the allegations in the complaint at the time of removal satisfy the amount in controversy requirement.")). Thus, as the instant declaratory judgment action

5

is a matter filed originally in this Court, the "good faith" standard applies.

Although the Sixth Circuit has not determined whether the amount in controversy in a declaratory judgment action should be measured by the policy limits or the value of the underlying claim, many courts have looked to the policy limits. *See Allstate Ins. Co. v. Renou*, 32 F. Supp.3d 856, 861 (E.D. Mich. 2014) (discussing circuit splits on whether the policy limits or value of underlying claim are used to determine the amount in controversy). Nevertheless, several district courts within the Sixth Circuit that have faced this question have looked to the underlying claims in determining the amount in controversy. *See, e.g., Allstate Ins. Co. v. Renou*, 32 F. Supp.3d at 861-63; *Capitol Specialty Ins. Corp. v. IKO, Inc.*, No. 3:13-CV-426-CRS, 2013 WL 6196564 (W.D. Ky. Nov. 26, 2013); *Grange Mut. Cas. Co. v. Safeco Ins. Co. of America*, 565 F. Supp.2d at 784-85. This Court agrees.

Generally, "the amount in controversy is the value to the petitioner of the rights he seeks to protect." *Grange Mut. Cas. Co.*, 565 F. Supp.2d at 783-84; *see also CSAA Gen. Ins. Co.*, 2021 WL 354464, at *3. In declaratory judgment actions, such as the one presented here, "where the issue is the applicability of an insurance policy to a particular occurrence, the amount in controversy is typically measured by the value of the underlying claim." *Frankenmuth Mutual Ins. Co.*, 2020 WL 376610, at *3; *see*

6

*also Grange Mut. Cas. Co.*, 565 F. Supp.2d at 783-84 ("In declaratory judgment actions, it is well established that the amount in controversy is measured by the value of the object of the litigation.") (internal citation omitted)). Thus, the amount in controversy is not necessarily the money judgment sought or recovered, but rather the value of the consequences which may result from the litigation." *Lodal, Inc. v. Home Ins. Co. of Illinois*, 156 F.3d 1230 (6th Cir. 1998) (quoting *Beacon Constr. Co. v. Matco Elec. Co.*, 521 F.2d 392, 399 (2d Cir. 1996)).

Here, Shelter Mutual alleges that the amount in controversy "exceeds the sum or value of $75,000 exclusive of interest and costs," based on the policy limits, the underlying state claims, and the cost of providing legal defense for such. [DE 1 at 2]. The limits of the Shelter Mutual liability policies at issue are: $500,000 under the Farmowner's Policy, $300,000 under the Personal Umbrella Policy, and $1,000,000 under the Business Insurance Policy. [DE 9 at 2; DEs 1-3, 1-4, 1-5]. As provided, the applicability of these policies would result in Shelter Mutual being liable for the value of the underlying litigation up to those limits. However, in this declaratory action, Shelter Mutual contends that its liability policies do not provide coverage for the allegations in the underlying state case. To be sure, the allegations in the ancillary state action are serious—including video voyeurism, voyeurism, intrusion, intentional infliction of

7

emotional distress, and violation of privacy. [DE 1-1 at 4-6]. Moreover, the remedies and alleged damages include past, present, and future mental pain and suffering; actual, consequential, incidental, and foreseeable damages; punitive damages; and attorney's fees, costs, pre- and post-judgment interest, and expenses. [DE 1-1 at 5-6; DE 1-2 at 4-5]. The Parties have not indicated whether any statutory limits to the amount of allowable damages exist.

Although not a case based on removal, actual and punitive damages are generally considered when determining the amount in controversy, "unless it is apparent to a legal certainty that such cannot be recovered." *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 572 (6th Cir. 2001) (quoting *Holley Equip. Co. v. Credit Alliance Corp.*, 821 F.2d 1531, 1535 (11th Cir. 1987)). Because the underlying claims and the contractual provisions all provide for damages and/or liability coverage, and no statutory limits exist, there is no legal certainty that such damages cannot be recovered. *See Kovacs v. Chesley*, 406 F.3d 393, 397 (6th Cir. 2005)).

Additionally, as Shelter Mutual correctly argues, the amount in controversy extends beyond the underlying claims in the state court case—it includes the cost of providing a legal defense on such claims. *See Grange Mut. Cas. Co.*, 565 F. Supp. 2d at 784 ("[Defense costs] are included in the amount in controversy (1) when provided by contract, (2) when provided by a statute that

expressly mandates or allows the payment of such fees, and (3) when an insurance company will have to pay the underlying defense costs of the insured."). Here, under the relevant policies, Shelter Mutual must pay the defense costs of its insured if the provisions are upheld, and Shelter Mutual has indicated that it is currently covering the costs of counsel in the underlying state court action. Thus, between legal fees and potential damages, it cannot be said with legal certainty that plaintiff cannot recover an amount exceeding $75,000, as alleged in the Complaint [DE 1 at 2]. Nor is there a plausible indication of bad faith articulated here. As such, the Court must deny Defendants' motion to dismiss based on subject matter jurisdiction. *See Owners Ins. Co. v. Frontier Housing, Inc.*, No. 16-40-HRW, 2017 WL 1097187, at *3 (E.D. Ky. Mar. 21, 2017).

Notwithstanding subject matter jurisdiction based on diversity of citizenship, Defendants also suggest that the Court should not exercise discretion to consider this matter under the Declaratory Judgment Act. [DEs 6 at 2-3; 10 at 1-2]. Though the Court has found that subject matter jurisdiction exists, "[e]xercise of jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201(a) is not mandatory." *Bitmunious Cas. Corp. v. J&L Lumber Co., Inc.*, 373 F.3d 807, 812 (6th Cir. 2004) (internal citations omitted). This is because the United States Supreme Court has "repeatedly characterized the Declaratory Judgment Act as 'an

expressly mandates or allows the payment of such fees, and (3) when an insurance company will have to pay the underlying defense costs of the insured."). Here, under the relevant policies, Shelter Mutual must pay the defense costs of its insured if the provisions are upheld, and Shelter Mutual has indicated that it is currently covering the costs of counsel in the underlying state court action. Thus, between legal fees and potential damages, it cannot be said with legal certainty that plaintiff cannot recover an amount exceeding $75,000, as alleged in the Complaint [DE 1 at 2]. Nor is there a plausible indication of bad faith articulated here. As such, the Court must deny Defendants' motion to dismiss based on subject matter jurisdiction. *See Owners Ins. Co. v. Frontier Housing, Inc.*, No. 16-40-HRW, 2017 WL 1097187, at *3 (E.D. Ky. Mar. 21, 2017).

Notwithstanding subject matter jurisdiction based on diversity of citizenship, Defendants also suggest that the Court should not exercise discretion to consider this matter under the Declaratory Judgment Act. [DEs 6 at 2-3; 10 at 1-2]. Though the Court has found that subject matter jurisdiction exists, "[e]xercise of jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201(a) is not mandatory." *Bitmunious Cas. Corp. v. J&L Lumber Co., Inc.*, 373 F.3d 807, 812 (6th Cir. 2004) (internal citations omitted). This is because the United States Supreme Court has "repeatedly characterized the Declaratory Judgment Act as 'an

enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant.'" *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995) (quoting *Public Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 241 (1952)).

In insurance cases, like this one, the Sixth Circuit has said that "declaratory judgment actions seeking an advance opinion on indemnity issues are seldom helpful in resolving an ongoing action in another court." *Bitmunious*, 373 F.3d at 812 (quoting *Manley, Bennett, McDonald & Co. v. St. Paul Fire & Marine Ins. Co.*, 791 F.2d 460, 463 (6th Cir. 1986)). Nevertheless, while courts may decline to exercise jurisdiction under the Declaratory Judgment Act, "there is no *per se* rule to prevent district courts from exercising jurisdiction over declaratory judgment actions related to insurance relationships and relevant exceptions to coverage." *Sec. Nat'l Ins. Co. v. Jamestown Union Bancshares, Inc.*, 352 F. Supp.3d 845, 852 (M.D. Tenn. 2018).

Accordingly, the Court must engage in a fact-specific inquiry to determine whether to exercise jurisdiction over the present declaratory judgment action. To assist in this analysis, the Sixth Circuit has identified five factors district courts to consider: (1) whether the judgment would settle the controversy; (2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory remedy is merely being used for "procedural fencing"

or "to provide an arena for a race for res judicata"; (4) whether the use of a declaratory judgment action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction; and (5) whether there is an alternative remedy that is better or more effective. *Bituminous*, 373 F.3d at 813 (citing *Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 968 (6th Cir. 2000)).

Here, however, Defendants fail to address the relevant factors in any substantive detail. As a consequence, Defendants have not demonstrated in any clear way, at least at this time, why the court should not exercise its discretion in this matter. Thus, to the extent that Defendants argue that the Court should decline to exercise its discretion over this matter, the motion to dismiss is denied.

## IV. CONCLUSION

Having considered the matter fully, and being otherwise sufficiently advised, **IT IS ORDERED** that Defendants' Motion to Dismiss [DE 6] is **DENIED.**

This the 26th day of May, 2021.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge